UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| LINDA J. ZIGDON, et al., | ) | Case No. 1:09CV0050 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | JUDGE ANN ALDRICH |
| | ) | (Magistrate Judge McHargh) |
| LVNV FUNDING, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The plaintiffs Linda J. Zigdon ("Zigdon") and Pamela Ruth ("Ruth") filed a

seven-count class action complaint in the Cuyahoga County (Ohio) Court of

Common Pleas against defendants LVNV Funding, LLC ("LVNV Funding");

Resurgent Capital Services, LP ("Resurgent Capital"); Sherman Financial Group,

LLC ("Sherman Financial"); Sherman Originator, LLC ("Sherman Originator");

Alegis Group, LLC ("Alegis"); Javitch, Block & Rathbone, LLP; and Millstone and

Kannensohn.  The action was removed to this court on Jan. 8, 2009.  (Doc. 1.)

The complaint alleges that Sherman Financial, Alegis, and Sherman

Originator "each take individual actions in directing the unlawful actions of LVNV

and Resurgent" that are the subject of the complaint.  (Doc. 1, DX A, compl., at ¶

18.)  It is alleged that LVNV and Resurgent Capital are "debt collectors" as defined in 15 U.S.C. § 1692a(6).  Id. at ¶¶ 7, 16.  LVNV acted as the agent of Sherman Originator in filing suit against the plaintiffs, and Sherman Originator acted as the agent of Sherman Financial.  Id. at ¶¶ 19.

The complaint further alleges that Alegis is the general partner of Resurgent Capital, and is responsible for the general management of Resurgent Capital. (Compl., at ¶¶ 20-21.)  Alegis, in turn, is owned entirely by Sherman Financial, and acts as an agent of Sherman Financial in operating Resurgent.  Id. at ¶¶ 22-23.  It is further alleged that "Resurgent acts as agent of Alegis in conducting the unlawful debt collection practices" at issue.  Id. at ¶ 24.  The complaint refers collectively to defendants LVNV, Resurgent Capital, Sherman Financial, Sherman Originator, and Alegis as "Sherman Operators."  Id. at ¶ 25.

Javitch, Block & Rathbone ("Javitch") is the law firm which represented LVNV in filing an action against Ruth in the Cuyahoga Falls Municipal Court on Oct. 28, 2005.  (Compl., at ¶¶ 26, 46.)  Millstone and Kannensohn ("Millstone") is the law firm which represented LVNV in filing an action  against Zigdon in the Shaker Heights Municipal Court on June 12, 2007.  Id. at ¶¶ 29, 35.

The first count of the complaint alleges a violation of the Fair Debt Collection Practices Act (FDCPA).  (Compl., at ¶¶ 68-73.)  The second count alleges "deceptive, unfair or unconscionable acts."  Id. at ¶¶ 74-78.  The third and fourth counts allege fraud.  Id. at ¶¶ 79-97.  The fifth count alleges civil conspiracy, against "Sherman Operators."  Id. at ¶¶ 98-102.  The sixth and seventh counts allege Zigdon was

fraudulently induced into signing a release as to claims against defendant LVNV in an earlier action.  Id. at ¶¶ 103-108.

The defendant Javitch, Block & Rathbone filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 5.)  As to the federal claim, they argue that Ruth's FDCPA claim is time-barred.  (Doc. 5, at 4-6.)  They also raise several grounds for dismissal against various of the state claims.  Id. at 6-18.

The defendants LVNV Funding, Resurgent Capital, Sherman Financial, Sherman Originator, and Alegis, have filed a joint motion to dismiss.  (Doc. 9.)  They also argue that the plaintiffs' FDCPA claims are time-barred.  (Doc. 9, at 5-6, 17.)  In addition, these defendants contend that Ruth waived any claim regarding LVNV's capacity to sue.  Id. at 7.  As to Zigdon, they assert that she released any claims she might have had, as a result of a release that she executed on July 10, 2008.  Id. at 17-19.  They also raise several grounds for dismissal concerning the state claims.

Finally, defendant Millstone and Kannensohn has filed a motion for judgment on the pleadings.  (Doc. 14.)  They too argue that Zigdon's FDCPA claims are time-barred.  Id. at 5-6.  They also assert that the release signed by Zigdon bars her claims.  Id. at 18-20.


I.  FAIR DEBT COLLECTION PRACTICES ACT

The Congressional purpose behind the FDCPA was:

. . . to eliminate abusive debt collection practices by debt collectors, to insure that those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 591 (6th Cir. 2009) (quoting 15 U.S.C. § 1692(e)).  The abusive debt collection practices which the FDCPA sought to remedy included "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." Miller, 561 F.3d at 596 (quoting Jacobson v. Healthcare Fin. Serv., Inc., 434 F.Supp.2d 133, 138 (E.D. N.Y. 2006).)

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Miller, 561 F.3d at 596 (quoting 15 U.S.C. § 1692e.)  The court determines whether a statement qualifies as misleading by using an objective, "least-sophisticated-consumer" test.  Id. at 592 (citing Kistner v. Law Offices of Michael P. Margelefsky LLC, 518 F.3d 433, 438-39 (6th Cir. 2008)).

An alleged violation of state law alone is insufficient to state a claim under the FDCPA.  Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1998); Taylor v. Quall, 471 F.Supp.2d 1053, 1062 (C.D. Cal. 2007); Lindbergh v. Transworld Sys., Inc., 846 F.Supp. 175, 181 (S.D. N.Y. 1994)  Instead, the court must determine whether the alleged state law violation constitutes a violation of

one of the provisions of the FDCPA. Taylor, 471 F.Supp.2d at 1062 (citing Wade, 87 F.3d at 1100-1101). In Taylor, the court found that the defendant's failure to comply "with California law requiring an entity with a fictitious business name to register that name with the state" could have been easily remedied, "therefore, it is simply not true that [defendant's] litigation efforts constituted action that could not legally be taken." Id.

The violations of the FDCPA alleged by plaintiffs here are as follows: Defendant debt collectors sought to collect consumer debt, including finance charges and fees, from the use of consumer credit cards, from plaintiffs Zigdon and Ruth. (Compl., at ¶¶ 69-70.) In so doing, the defendants violated the FDCPA in these ways:

> a. Defendants violated 15 U.S.C. § 1692e when they commenced and maintained debt collection lawsuits in state court against the Plaintiffs and class members, even though they did not have legal capacity to do so.

> b. Defendants violated 15 U.S.C. § 1692f when they demanded payment for costs and interest in such lawsuits.

> c. Defendants violated 15 U.S.C. § 1692e(8) by reporting or causing to be reported inaccurate credit information, as to the illegally filed lawsuits, which they knew or should have known was false.

(Compl., at ¶ 72.)

The complaint also alleges a class action. (Compl., at ¶ 1.) The class would consist of those similarly-situated consumers "who have been or may be subjected to defendants' unlawful collection related practices." Id. at ¶ 53. More specifically, the class would consist of "all persons who were named as defendant in a civil action in

5

which 'LVNV FUNDING, LLC' was the named plaintiff, and which action was filed while LVNV lacked legal capacity to bring such an action." Id. at ¶ 54. The class claims "are based on the same legal and factual theories" as those of the named plaintiffs Zigdon and Ruth. Id. at ¶ 62. No class has yet been certified by the court.


## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Javitch, Block & Rathbone has filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 5.) Defendants LVNV Funding, Resurgent Capital, Sherman Financial, Sherman Originator, and Alegis, have filed a joint motion to dismiss. (Doc. 9.)

Until recently, the standard for a motion to dismiss for failure to state a claim upon which relief can be granted was that the motion establish, beyond a reasonable doubt, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996). However, in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), the Supreme Court modified the standard, in particular the "no set of facts" phrase.

The Court's ruling in Twombly abrogated Conley, and moved away from the pure notice pleading standards that had previously been a hallmark of the Civil Rules. See, e.g., Twombly, 550 U.S. at 572-588 (Stevens, J, dissenting); Association

6

of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (Twombly "disavowed" Conley standard).  See generally Silva v. Hollis, No. 3:08CV2589, 2009 WL 1270297, at *1 (N.D. Ohio May 5, 2009) (Carr, J.) (applying Twombly); Dhillon v. Cleveland Clinic Found., No. 5:07CV3505, 2009 WL 901870, at *1-*2 (N.D. Ohio Mar. 31, 2009) (Adams, J.) (same); Frost v. Boyle, No. 1:06 CV 2649, 2008 WL 650323 (N.D. Ohio Mar. 5, 2008) (Oliver, J.) (Twombly abrogated Conley standard).

The Court in Twombly characterized Conley's heretofore universally-accepted[1] "no set of facts" phrase as ". . . best forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563; Cleveland Fire Fighters, 502 F.3d at 548 (quoting Twombly).  The Court stated that Conley merely "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  Twombly, 550 U.S. at 563.

In Ashcroft v. Iqbal, the Court clarified that the new Twombly standard is not intended to be limited to complicated litigation, such as the antitrust conspiracy case in Twombly.  Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The Court asserted that

---

[1] See, e.g., Twombly, 550 U.S. at 577-578 (citing cases) (Stevens, J., dissenting); O'Brien v. University Community Tenants Union, Inc., 42 Ohio St.2d 242, 327 N.E.2d 753 (1975) (syllabus).

the new pleading standards governing Rule 8(a) do not require "detailed factual allegations," however they do require "factual enhancement." Iqbal, 129 S.Ct. at 1949. Only "a complaint that states a plausible claim for relief" will survive a motion to dismiss. Id. at 1950.

> The Court summarized its new "plausibility" standard as follows:
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. 554). See, e.g., Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (plausibility standard). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The Supreme Court stated that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombly, 550 U.S. at 563 n.8. The function of the court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses. Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). Rather,

8

the court is simply to determine "whether a complaint states a plausible claim for relief." Iqbal, 129 S.Ct. at 1950.

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural, and tests the sufficiency of the complaint. Miller, 50 F.3d at 377; State ex rel. Hanson v. Guernsey County Bd. of Comm'rs, 65 Ohio St.3d 545, 548, 605 N.E.2d 378, 381 (1992). The court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true. Central States Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252, 255 (6th Cir. 1997). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555).

### III.  MOTION FOR JUDGMENT ON THE PLEADINGS

Millstone and Kannensohn has filed a motion for judgment on the pleadings. (Doc. 14.) In ruling on a motion for judgment on the pleadings under Rule 12(c), the court considers all factual allegations of the complaint as true. Lindsay v. Yates, 498 F.3d 434, 438 (6th Cir. 2007); McKamey v. Roach, 55 F.3d 1236, 1237 (6th Cir. 1995); United States v. Moriarty, 8 F.3d 329, 332 (6th Cir. 1993). Where a Rule 12(c) motion raises what is essentially a Rule 12(b)(6) defense by challenging the legal basis of the complaint, the analytical framework for the motion for judgment on the pleadings mirrors that used under Rule 12(b)(6). Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979).

9

## IV.  FDCPA STATUTE OF LIMITATIONS

The Fair Debt Collection Practices Act (FDCPA), which is the sole basis for this court's federal question jurisdiction, provides that an action alleging violations of 15 U.S.C. § 1692e may be brought "within one year from the date on which the violation occurs."  Whittiker v. Deutsche Bank Nat. Trust Co., 605 F.Supp.2d 914, 926 (N.D. Ohio 2009) (quoting 15 U.S.C. § 1692k(d)); Ruth v. Unifund CCR Partners, No. 5:08CV2689, 2009 WL 585847, at *4 (N.D. Ohio Mar. 6, 2009).

The core FDCPA violations are that the defendants "violated 15 U.S.C. § 1692e when they commenced and maintained debt collection lawsuits in state court against the Plaintiffs and class members, even though they did not have legal capacity to do so."  (Compl., at ¶ 72.a.)  The alleged violation of 15 U.S.C. § 1692f, the alleged demand for payment for costs and interest (id. at ¶72.b.), is linked to the filing of the lawsuits.  Similarly, the alleged credit reporting violation, 15 U.S.C. § 1692e(8), is also linked to "the illegally filed lawsuits."  Id. at ¶ 72.c.  Other than the filing of the lawsuits themselves, the complaint contains no factual allegations of any actual credit reporting violations.

The complaint alleges that LVNV and Millstone filed an action against Zigdon in the Shaker Heights Municipal Court on June 12, 2007, at which time LVNV allegedly did not have the capacity to file a legal action in Ohio.  (Compl., at ¶¶ 35-42.)  Service was perfected on Zigdon on June 22, 2007.  (Doc. 14, at 6, and DX 1, state ct. docket.)  That suit was voluntarily dismissed on July 31, 2008.  (Compl., at ¶ 37.)  At the time of dismissal, Zigdon and LVNV executed a settlement

agreement which contains a mutual release.  (Doc. 9, at 3; doc. 1, compl., exh B, release.)

The complaint further alleges that LVNV and Javitch filed an action against Ruth in the Cuyahoga Falls Municipal Court on Oct. 28, 2005, at which time LVNV allegedly did not have the capacity to file a legal action in Ohio.  (Compl., at ¶¶ 46-50.)  Javitch notes that service was made by ordinary mail on Dec. 12, 2005.  (Doc. 5, at 6; doc. 12, state ct. docket.)  That suit was voluntarily dismissed on May 30, 2006.  (Compl., at ¶ 48.)

The statute of limitations for an FDCPA claim is one year from the date on which the violation occurs.  Whittiker, 605 F.Supp.2d at 926; Ruth, 2009 WL 585847, at *4.  Millstone argues that, where the alleged violation arises from the initiation of a debt collection lawsuit, the limitations period should begin to run when the complaint was served on the debtor.  (Doc. 14, at 5-6, citing cases; see also doc. 19, at 2.)  As noted above, Ruth was served in December 2005, and Zigdon was served in June 2007.

The complaint in this case was filed in the Cuyahoga County Court of Common Pleas on Dec. 8, 2008.  (Doc. 1, DX A, compl.)  Although there is no guidance from the Sixth Circuit about whether the FDCPA limitations period begins with the filing of the collection lawsuit[2], or service on the debtor-defendant,

---

[2] LVNV points out that both plaintiffs claim that the filing of the state court collection suits against them gives rise to the FDCPA claims.  (Doc. 19, at 2.)  Plaintiffs assert that "[t]he first misrepresentation occurred at the filing of the unlawful lawsuits."  (Doc. 15, at 12.)  See also doc. 16, at 5 (arguing FDCPA

see e.g., Ruth, 2009 WL 585847, at *4, plaintiffs do not contest that their complaint was not timely filed within the FDCPA statute of limitations.[3]  Instead, they stress that the doctrine of equitable tolling should apply to save their claims.  (Doc. 15, at 4-5; doc. 16, at 7-11; doc. 21, at 4-7.)

The court finds that the plaintiffs' Dec. 8, 2008, complaint was not timely filed within the ordinary running of the FDCPA statute of limitations.  The court agrees with those cases finding that the limitations period begins to run when the state court complaint was served on the debtor-defendant, where the alleged FDCPA violation is the filing of the state lawsuit.  See, e.g., Johnson v. Riddle, 305 F.3d 1107, 1113 (10th Cir. 2002).  The debtor-defendant receives notice of the alleged violation with service, which in this case was Dec. 12, 2005, for plaintiff Ruth, and on June 22, 2007, for Zigdon.  Neither plaintiff filed within one year of

---

violation complete upon filing of suit without legal right).

[3] However, in plaintiffs' opposition to Millstone's motion for judgment on the pleadings, they argue that each filing made during the state court action is a separate misrepresentation, thus defendants violated Ohio Rev. Code §§ 1329.10(B) and 1705.58(A) with each filing, thereby extending the limitations period.  (Doc. 21, at 3-4.)  Plaintiffs provide no case authority for this theory, and they did not plead these purportedly separate violations in their complaint.  Whether or not each filing during the state court action may be construed as a separate violation of the Ohio statutes, the court does not find these to constitute separate violations of the FDCPA.  See Calka v. Kucker, Kraus & Bruh, LLP, No. 98 Civ. 0990, 1998 WL 437151, at *3 (S.D. N.Y. Aug. 3, 1998) (rejecting proposition that each proceeding in state action amounted to new FDCPA violation); accord, Ruth, 2009 WL 585847, at *11 (citing cases).

the applicable date.  The court will examine whether equitable tolling will save their untimely FDCPA claims.

## V.  EQUITABLE TOLLING

The Sixth Circuit has not ruled on whether equitable tolling applies to claims under the FDCPA.  See, e.g., Whittiker, 605 F.Supp.2d at 927 (noting same); Castleberry v. Neumann Law P.C., No. 1:07CV856, 2008 WL 5744179, at *8 (W.D. Mich. July 9, 2008).  However, the Supreme Court has stated that limitations periods in federal statutes "are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute."  Young v. United States, 535 U.S. 43, 49 (2002); see also Egerer v. Woodland Realty, Inc., 556 F.3d 415, 421 n.8 (6th Cir. 2009) (quoting Young, in RESPA case); Somin v. Total Community Mgmt. Corp., 494 F.Supp.2d 153, 158-159 (E.D. N.Y. 2007) (finding equitable tolling applies in FDCPA case).  The court will assume, for the purposes of these motions, that equitable tolling can be addressed in an FDCPA action.

To benefit from equitable tolling, the plaintiff must show that she has been pursuing her rights diligently, and that some extraordinary circumstance stood in her way.  Lawrence v. Florida, 549 U.S. 327, 335 (2007); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  Equitable tolling is "available only in compelling circumstances which justify a departure from established procedures."  Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1488 (6th Cir. 1989).  Sixth Circuit case law has consistently held that the circumstances which will lead to equitable tolling

are rare. Souter v. Jones, 395 F.3d 577, 590 (6th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 321 (1995)); King v. Bell, 378 F.3d 550, 553 (6th Cir. Aug. 3, 2004) (citing Dunlap v. United States, 250 F.3d 1001, 1009 (6th Cir. ), cert. denied, 534 U.S. 1057 (2001)); Ruth, 2009 WL 585847, at *7 ("rare and exceptional"); Castleberry, 2008 WL 5744179, at *8 ("applied sparingly"); see also Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 840 (2000) (rare and exceptional); Somin, 494 F.Supp.2d at 158 (same).

The plaintiff has the burden of persuading the court that she is entitled to equitable tolling. Allen v. Yukins, 366 F.3d 396, 401 (6th Cir.), cert. denied, 543 U.S. 865 (2004); McClendon v. Sherman, 329 F.3d 490, 494 (6th Cir. 2003); Griffin v. Rogers, 308 F.3d 647, 653 (6th Cir. 2002); Ruth, 2009 WL 585847, at *7; Castleberry, 2008 WL 5744179, at *8.

The following factors are generally considered when the issue of equitable tolling arises:

> (1) lack of notice of the filing requirement, (2) lack of constructive knowledge of the filing requirement, (3) diligence in pursuing one's rights, (4) absence of prejudice to the defendant, and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

Chavez v. Carranza, 559 F.3d 486, 492 (6th Cir.), cert. denied, 130 S.Ct. 110 (2009) (citing Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir. 2000)); King, 378 F.3d at 553 (quoting Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988)); Castleberry, 2008 WL 5744179, at *9. The Supreme Court has noted that equitable tolling also may be permissible "where the [plaintiff] has

14

been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Ruth, 2009 WL 585847, at *7 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 453, 458 (1990)).

The plaintiffs assert that equitable tolling should be applied to their FDCPA claims under the "discovery rule" as set forth in Foster v. D.B.S. Collection Agency, 463 F.Supp.2d 783 (S.D. Ohio 2006).  (Doc. 15, at 4; doc. 16, at 8.)  In Foster, the court found that equitable tolling could be applied in an FDCPA case.  Foster, 463 F.Supp.2d at 799.  In so doing, the court invoked the doctrine of fraudulent concealment as applied in a Truth in Lending Act (TILA) case.  Id. at 799-800 (quoting Jones v. TransOhio Sav. Ass'n, 747 F.2d 1037 (6th Cir. 1984)).  In Jones, the Sixth Circuit found that:

> . . . for application of the doctrine of fraudulent concealment, the
> limitations period runs from the date on which the borrower discovers
> or had reasonable opportunity to discover the fraud involving the
> complained of TILA violation.

Id. at 800 (quoting Jones, 747 F.2d at 1043).

Jones involved a mortgage loan and promissory note.  The lender had provided an inaccurate and misleading disclosure statement which "describe[d] the annual percentage rate and monthly installment payments in fixed terms only, and does not disclose or refer to the variable interest rate feature of the [promissory] note." Jones, 747 F.2d at 1038.  In fact, the promissory note, "written in fine print difficult to read, let alone to understand, and would require someone with legal training and experience to interpret as well as to apply," contained a variable

15

interest rate feature, as well as a cognovit provision by which the borrowers

"waive[d] issuance and service of process, and all defenses and rights of appeal, and

thereby authorize[d] confession of judgment against them." Id.  The court found

that the doctrine of fraudulent concealment, and equitable tolling, should apply. Id.

at 1039-1043.

This court finds that Jones is distinguishable on its factual circumstances,

and does not find Foster persuasive.  Nothing comparable to the misleading

disclosure statement is involved in the facts of this case.  Other than its citation to

Jones, the court in Foster did not address the doctrine of fraudulent concealment.

Another reason this court finds Foster unpersuasive is in its application of

equitable tolling.  The court in Foster appears to place the burden on the

defendants to demonstrate why equitable tolling should not be applied.  See, e.g.,

Foster, 463 F.Supp.2d at 800 ("Defendants have not proved when any of the class

members discovered or had reasonable opportunity to discover Defendants' alleged

misrepresentations").  The case law on equitable tolling clearly dictates that burden

is on plaintiffs.  See Allen, 366 F.3d at 401; McClendon, 329 F.3d at 494; Griffin,

308 F.3d at 653; Johnson-Brown v. Wayne State Univ., 173 F.3d 855, 1999 WL

191322, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW); Pinney Dock & Transp.

Co. v. Penn Cent. Corp., 838 F.2d 1445, 1465 (6th Cir.), cert. denied, 488 U.S. 880

(1988); Ruth, 2009 WL 585847, at *7; Castleberry, 2008 WL 5744179, at *8.

Although the Foster court may have addressed the issue in the context of an

affirmative defense, the issue of equitable tolling will ordinarily arise in those

16

situations where the defendants argue that the statute of limitations has expired.
Nonetheless, the burden of demonstrating equitable tolling is properly on the
plaintiffs.

### A. Fraudulent Concealment

Regarding the doctrine of fraudulent concealment, the Sixth Circuit has
found that:

> In order to establish equitable tolling by fraudulent concealment,
> plaintiffs must allege and establish that:  1) defendants concealed the
> conduct that constitutes the cause of action; 2) defendants'
> concealment prevented plaintiffs from discovering the cause of action
> within the limitation period; and 3) until discovery of the cause of
> action, plaintiffs exercised due diligence in trying to find out about the
> cause of action.

Whittiker, 605 F.Supp.2d at 927 (citing Pinney Dock, 838 F.2d at 1465); see also
Egerer, 556 F.3d at 422 (citing Pinney Dock); Somin, 494 F.Supp.2d at 158-159.

The conduct that constitutes plaintiffs' FDCPA cause of action is that the
defendants violated the FDCPA "when they commenced and maintained debt
collection lawsuits in state court against the Plaintiffs . . . , even though they did
not have legal capacity to do so." (Compl., at ¶ 72.a.)  In particular, the complaint
alleges that:

> 38.  At no time did LVNV reveal to Zigdon that it had filed the [June
> 12, 2007] lawsuit against her when it was not registered to do business
> in Ohio.
>
> 39.  At no time did LVNV reveal to Zigdon that it did not have the
> legal capacity to file the lawsuit against her.

* * * * *

49.  At no time did LVNV reveal to Ruth that it had filed the [Oct. 28, 2005] lawsuit against her when it was not registered to do business in Ohio.

50.  At no time did LVNV reveal to Ruth that it did not have the legal capacity to file the lawsuit against her.

51.  Ruth was not aware of the fact, until mid-year 2008, that LVNV was not registered to do business in Ohio when it filed the lawsuit against her.

(Doc. 1, compl., at ¶¶ 38-39, 49-50.)

The plaintiffs contend that these allegations demonstrate "that defendants concealed their lack of legal right to sue, and that this concealment prevented her from discovering the cause of action within the limitations period." (Doc. 15, at 5, citing compl., at ¶¶ 49-50.)

Javitch responds that the acts constituting fraudulent concealment must be pled with particularity in the complaint, and that plaintiffs failed to do so.  (Doc. 17, at 2, citing Fed. R. Civ. P. 9(b); see also doc. 19, at 4; and Ohio Civ.R. 9(B).)

The Supreme Court has recognized the importance of statutes of limitation, ruling that:

. . . the plaintiff who invokes the doctrine of fraudulent concealment will be "held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.'"

Pinney Dock, 838 F.2d at 1465 (quoting Wood v. Carpenter, 101 U.S. (11 Otto) 135, 139-40 (1879) (internal citation omitted)); see also Yuhasz v. Brush Wellman, Inc.,

18

341 F.3d 559, 563 (6th Cir. 2003) (circumstances constituting fraud must be stated with particularity).  "Conclusory allegations of fraudulent concealment are not sufficient to withstand a motion to dismiss." Moll v. U.S. Life Title Ins. Co. of New York, 700 F.Supp. 1284, 1289 (S.D. N.Y. 1988).  In accordance with Rule 9(b), plaintiffs must plead with particularity any fraudulent conduct which would justify equitable tolling on that basis.  Id.; see also Ohio Civ.R. 9(B).

1.  Did defendants conceal conduct that constitutes FDCPA cause of action?

In order to establish equitable tolling by fraudulent concealment, plaintiffs must allege that the defendants concealed the conduct that constitutes the FDCPA violation.  Pinney Dock, 838 F.2d at 1465; Whittiker, 605 F.Supp.2d at 927.

The plaintiffs argue that the mere filing of the lawsuits conveys that LVNV "has the right to bring and maintain the lawsuit." (Doc. 16, at 6; see also compl., at ¶¶ 80-82.)  They maintain that the FDCPA imposes a duty on debt collectors "not to make  misrepresentations." Id.

Javitch contends that "mere silence, or one's unwillingness to divulge one's allegedly wrongful activities, is not sufficient" to establish concealment.  (Doc. 17, at 3, quoting Pinney Dock, 838 F.2d at 1471-1472.)  Javitch also points out that Javitch was not required to allege, and had no duty to allege, that LVNV had the legal capacity to sue in Ohio.  (Doc. 17, at 4, citing Ohio Civ. 9(A); see also doc. 9, at 11; doc. 14, at 11-12.)  Neither was there a fiduciary relationship between the parties which would serve as a basis for a duty to disclose.  (Doc. 9, at 11; doc. 14, at 11-12; doc. 17, at 4.)

The conduct that underlies the alleged FDCPA violation, filing debt collection lawsuits in state court against the plaintiffs, is not fraudulent in itself.  The alleged fraudulent concealment which is the basis for the argument for equitable tolling is the defendant LVNV's alleged lack of legal capacity to file suit in Ohio, and the defendants' failure to "reveal" to the plaintiffs that LVNV did not have the legal capacity to file the lawsuit against them.  (Compl., at ¶¶ 38-39, 49-50.)

The plaintiffs do not allege that the provisions of the FDCPA itself require compliance with state business registration statutes, nor require any notification to a debtor as to that status.  In addition, under Ohio law,

> It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party.  When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

Ohio Civ.R. 9(A).

The plaintiffs also do not allege that the defendants had some duty to disclose their legal status to them.  Fraudulent concealment involving nondisclosure of a fact only lies where there is a duty to disclose.  Scotts Co. v. Central Garden & Pet Co., 403 F.3d 781, 789 (6th Cir. 2005); Leal v. Holtvogt, 123 Ohio App.3d 51, 75-76, 702 N.E.2d 1246, 1262 (Ohio Ct. App.  1998).  The relationship of debtor and creditor, without more, is not a fiduciary relationship requiring such a duty to

20

disclose.  Blon v. Bank One, Akron, N.A., 35 Ohio St.3d 98, 101, 519 N.E.2d 363, 367 (1988).

There is a critical distinction, then, between a failure to "reveal," and a "fraudulent concealment."  To establish fraudulent concealment, there must be allegations of  affirmative acts of concealment.  Electric Power Bd. of Chattanooga v. Monsanto Co., 879 F.2d 1368, 1377 (6th Cir. 1989), cert. denied, 493 U.S. 1022 (1990); Allen v. Diebold, Inc., 807 F.Supp. 1308, 1314 (N.D. Ohio 1992), aff'd, 33 F.3d 674 (6th Cir. 1994).  There must be allegations that the defendants took active steps, beyond the mere filing of the state court suit, that prevented plaintiffs from filing their FDCPA suit within the limitations period.  Egerer, 556 F.3d at 422-423; Allen, 807 F.Supp. at 1314.  "Mere silence, or one's unwillingness to divulge one's allegedly wrongful activities, is not sufficient."  Pinney Dock, 838 F.2d at 1472. "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry."  Moll, 700 F.Supp. at 1291 (quoting Wood, 101 U.S. at 143); see also Ruth, 2009 WL 585847, at *9.

The complaint does not allege that the defendants took any active steps to conceal that LVNV was not registered to do business in Ohio, and thus may not have had the legal capacity to file the lawsuits against Ruth or Zigdon.

2. Did defendants' alleged concealment prevent plaintiffs from discovering the cause of action within the limitation period?

The second element of fraudulent concealment is whether defendants' alleged concealment prevented plaintiffs from discovering the cause of action within the

FDCPA limitation period.  Pinney Dock, 838 F.2d at 1465; Whittiker, 605 F.Supp.2d at 927.

LVNV asserts that there is no evidence that defendants fraudulently concealed LVNV's failure to register.  They note that registration is matter of public record, and that registration information is easily obtained through the Ohio Secretary of State's website.  (Doc. 9, at 6; see also doc. 19, at 4.)

In addition, the court notes that the captions of the state court complaints provided notice to Zigdon and Ruth that the state-court plaintiff LVNV was an out-of-state entity, from Greenville, South Carolina.  See doc. 14, DX 3, complaint against Zigdon, and doc. 12, state ct. docket, at [22], complaint against Ruth.

The plaintiffs have not alleged that defendants did anything to prevent Zigdon or Ruth from finding the information on which the lack of capacity claim is based, or to otherwise mislead them into missing the limitations deadline.  See, e.g., Ruth, 2009 WL 585847, at *9; Castleberry, 2008 WL 5744179, at *9.

### 3.  Did plaintiffs exercise due diligence in trying to find out about the cause of action?

Finally, the plaintiffs must allege that they exercised due diligence in trying to find out about the cause of action.  Pinney Dock, 838 F.2d at 1465; Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975); Whittiker, 605 F.Supp.2d at 927.  Javitch notes that the plaintiffs do not plead the exercise of diligence in trying to find out about the cause of action.  (Doc. 17, at 3.)

There is no allegation of diligence in the complaint.  As to Zigdon, the complaint alleges that, at the time the state court action was dismissed, "Zigdon was not aware of the fact that LVNV was not registered to do business in Ohio when it filed the lawsuit against her."  (Doc. 1, compl., at ¶ 40.)  As to Ruth,  the complaint alleges that "Ruth was not aware of the fact, until mid-year 2008, that LVNV was not registered to do business in Ohio when it filed the lawsuit against her."  Id. at ¶ 51.  Lack of awareness is clearly not diligence in trying to find out about the cause of action.  The fact that the state court complaints reflected that the plaintiff LVNV was based in South Carolina is merely one fact that should have "excited suspicion," see Dayco, 523 F.2d at 394 (quoting Wood, 101 U.S. at 143), concerning the legal status of an out-of-state entity.

The complaint does not allege that plaintiffs exercised due diligence, and there is no indication in the allegations of the complaint that plaintiffs would have been prevented by defendants from discovering their FDCPA cause of action within the limitations period had they exercised due diligence.

### 4.  Allegations of complaint do not support fraudulent concealment

Having examined all the elements, the court finds that the allegations of the complaint are insufficient to support equitable tolling by reason of fraudulent concealment.  See Egerer, 556 F.3d at 422; Pinney Dock, 838 F.2d at 1465); Moll, 700 F.Supp. at 1289; Whittiker, 605 F.Supp.2d at 927.  The complaint does not contain sufficient factual matter, accepted as true, to support equitable tolling of the untimely federal claim.  See generally Iqbal, 129 S.Ct. at 1949.

23

## VI.  TOLLING AS CLASS MEMBERS

The plaintiffs also argue that the FDCPA statute of limitations should be tolled because they were putative class members in another suit filed in this court, Foraker v. LVNV Funding, LLC, No. 1:07CV3636 (N.D. Ohio 2008), which was settled before trial.  (Doc. 16, at 10; doc. 21, at 5-7; see generally, compl., at ¶¶ 43-44.)  The named defendants in that suit were LVNV Funding, LLC; Resurgent Capital Services, LP; Weltman, Weinberg, & Reis, Co., LPA; and John Does.  Foraker v. LVNV Funding, LLC, No. 1:07CV3636 (N.D. Ohio Nov. 21, 2007) (removal & complaint).  That suit was filed in state court on Oct. 17, 2007, removed to this district court, and dismissed as settled on April 4, 2008.  A motion to amend the complaint was pending when the case was settled.  Plaintiff Foraker was represented by the same counsel as Zigdon and Ruth are in the present case.

The Supreme Court has held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 353-354 (1983); American Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 (1974).  Class action tolling might be applicable, then, to plaintiffs Zigdon and Ruth.

However, "class action tolling does not apply to a defendant not named in the class action complaint."  Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp., 413 F.3d 553, 567-568 (6th Cir. 2005) (citing cases).  See also Haugh v. Depuy-Motech, Inc., No. 00-55001, 2001 WL 823817, at *2 (9th Cir. July 10, 2001) (same); Cullen v.

Margiotta, 811 F.2d 698, 726 (2d Cir. 1987) (citing Arneil v. Ramsey, 550 F.2d 774, 782 n.10 (2d Cir. 1977)) (same). The only named defendants in Foraker who are also defendants in this action are LVNV Funding, LLC, and Resurgent Capital Services, LP. The other defendants would not be affected by class action tolling.[4]

Zigdon was served in the state court action filed by LVNV and Millstone on June 22, 2007. (Doc. 14, at 6, and DX 1, state ct. docket.) Thus, the court finds that the one-year FDCPA statute of limitations began running on that date, and would have expired one year later. When Foraker was filed in state court on Oct. 17, 2007, the statute of limitations was tolled, but 117 days of the limitations period had already run, and 248 days remained. Foraker was dismissed as settled on April 4, 2008. The statute resumed running on April 5, 2008, and would have expired 248 days later, on Dec. 8, 2008. The complaint in this case was filed on that same day, Dec. 8, 2008, thus it was filed on the last day of the limitations period, so far as Zigdon's FDCPA claim is concerned.

Ruth was served in the state court action filed by LVNV and Javitch on Dec. 12, 2005. (Doc. 5, at 6; doc. 12, state ct. docket.) The one-year FDCPA statute of limitations began running on that date, and expired one year later, on Dec. 12, 2006. When Foraker was filed in state court on Oct. 17, 2007, the one-year statute

_____

[4] Plaintiffs contend that Millstone was identified as a possible "John Doe" defendant in Foraker, and that discovery was pending regarding that possibility. (Doc. 21, at 5-6.) Millstone was never added as a named defendant, however.

25

of limitations for Ruth's FDCPA claim had already expired.  The complaint in this case, which was filed on Dec. 8, 2008, was untimely as to Ruth.

The only parties which might remain in the FDCPA action as a result of class action tolling would be plaintiff Zigdon and defendants LVNV Funding, LLC, and Resurgent Capital Services, LP.


## VII.  MUTUAL RELEASE

The defendants argue that the complaint should be dismissed on several other grounds as well.  In particular, LVNV and Millstone argue that Zigdon's claims should be dismissed on the basis of a mutual release that Zigdon and LVNV executed in settlement of their earlier state court action.  (Doc. 9, at 17-19; doc. 14, at 18-21; see generally doc. 1, compl., exh B, release.)

The July 10, 2008, "Mutual Release and Agreement" provides that the parties, to avoid the cost and burden of continuing the litigation in Shaker Heights Municipal Court, "desire to fully and completely settle all of their claims."  (Compl., exh B, release, at 1.)  Through the release, Zigdon "releases and forever discharges LVNV and its associates," affiliates, "related corporations," and assorted synonymous entities from any and all claims "of any kind or description."  Id. at 2, ¶ 2.  In exchange, LVNV agreed to dismiss the pending action.  Id. at ¶ 3.  The parties to the release stated that they "have had the benefit and advice of independent

counsel[5] in the pending action and in connection with this Agreement." Id. at 2-3, ¶ 5.  It would ordinarily appear that the mutual release would bar Zigdon's claims.

Zigdon alleges that the release "contains misrepresentations and unfair and unconscionable terms."  (Doc. 1, compl., at ¶ 105.)  She alleges that her signing of the release was procured by fraud.  Id. at ¶ 106.  She argues that the release should be found void or unenforceable.  Id. at ¶ 108.  Zigdon contends that "LVNV had a duty to speak the truth about claims it knew Zigdon had against it, but which were not known to Zigdon."  (Doc. 16, at 19; doc. 21, at 18.)

Zigdon states that "a release obtained by fraud in the factum is void ab initio, and a release obtained by fraud in the inducement is voidable upon proof of fraud."  (Doc. 21, at 18, citing Haller v. Borror Corp., 50 Ohio St.3d 10, 13, 552 N.E.2d 207 (1990).)  The fraud alleged is that "LVNV had a duty to speak the truth about claims it knew Zigdon had against it," that is, the failure to register and the resulting alleged legal incapacity discussed above, which was one basis for the FDCPA claims in the Foraker suit as well as in the present suit.

A valid release is an absolute bar to a later action on any claim encompassed within the release, unless the release was obtained by fraud.  Johnson v. Columbus Met. Library, No. 2:99CV557, 2000 WL 1460072, at *4 (S.D. Ohio Sept. 29, 2000);

---

[5]  The parties contest the significance of this passage, with Zigdon asserting that she was unrepresented by counsel.  However, the release does not state that Zigdon was represented by counsel in the lawsuit, merely that she had the "benefit and advice of independent counsel."  This provision stands alone in the release, at the top of the signature page, and Zigdon obviously would have had knowledge of whether or not she consulted counsel independently.

Carr v. Armstrong Air Conditioning, Inc., 817 F.Supp. 54, 58 (N.D. Ohio 1993);

Haller, 50 Ohio St.3d at 13, 552 N.E.2d at 210.  A release may be set aside upon

proof that it was obtained by fraud.  Johnson, 2000 WL 1460072, at *4.  Whether a

party may set aside a release based upon fraud involves consideration of the nature

of the fraud alleged.  Johnson, 2000 WL 1460072, at *4; Haller, 50 Ohio St.3d at 13,

552 N.E.2d at 210.

> The Ohio Supreme Court has distinguished two relevant types of fraud:
>
> A release is obtained by fraud in the factum where an intentional act
> or misrepresentation of one party precludes a meeting of the minds
> concerning the nature or character of the purported agreement. . . .
> However, where there is mere misrepresentation by one party of the
> contents of a release, . . . [the release] is voidable only, and can be
> contested only after a return or tender of consideration.

Haller, 50 Ohio St.3d at 13-14, 552 N.E.2d at 210 (internal citations omitted).

## A.  Fraud in the Factum

A release obtained by fraud in the factum is void ab initio.  Johnson, 2000

WL 1460072, at *4; Carr, 817 F.Supp. at 58 n.1; Haller, 50 Ohio St.3d at 10, 552

N.E.2d at 208 (syllabus).  Fraud in the factum involves misrepresentations as to the

nature of the release.  In Johnson, for example, the court found that the plaintiff did

not allege that "the Defendant's misrepresentations impaired his judgment to

render him unable to understand the nature of the agreement."  Johnson, 2000 WL

1460072, at *4.  A release is obtained by fraud in the factum where some

intentional act or misrepresentation prevents a meeting of the minds concerning

the character or nature of the purported agreement.  Haller, 50 Ohio St.3d at 13,

552 N.E.2d at 210.  See also FDIC v. Aetna Cas. & Sur. Co., 947 F.2d 196, 203 (6th Cir. 1991) (misrepresentation as to character or essential terms).

> As the Haller court noted:

> . . . where there is mere misrepresentation by one party of the contents of a release, the agreement is not void for fraud in the factum when the releasor has an opportunity to read and understand the document before execution.  "A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. * * * If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs."

Haller, 50 Ohio St.3d at 13-14, 552 N.E.2d at 210 (internal citations omitted).  The release here may be phrased in legalese, but it is abundantly clear that the nature of the release is such that it is intended apply to any and all claims between the parties.  See generally  Compl., exh B, release.

Zigdon attempts to argue that the release contained "contains misrepresentations and unfair and unconscionable terms," such as a "release of claims alleged to be unknown to both parties, while concealing claims available to Zigdon but known only to LVNV."  (Doc. 1, compl., at ¶ 105.)  The court does not find this to be a plausible reading of the release, which states that the release shall "constitute a full and final release and shall apply to all such unknown or unsuspected injuries, losses, damages, or consequences."  Compl., exh B, release, at 5.  The court finds this language to simply indicate the global nature of the release, that is, it applies not only to known injuries (such as those at issue in the lawsuit being dismissed), but unknown issues between the parties as well.  This is hardly

an unusual provision in a mutual release. The allegations of the complaint do not support a plausible claim that the release was obtained by fraud in the factum.

## B. Fraud in the Inducement

A release obtained by fraud in the inducement is voidable upon proof of fraud. However, the party contesting the release must first tender back the consideration received for making the release. Haller, 50 Ohio St.3d at 10, 552 N.E.2d at 208 (syllabus). Where fraud in the inducement is alleged[6], the fraud relates not to the nature of the release, but the party claims she was induced to grant the release based on misrepresentations, such as the economic value of the claim released, or the consideration paid. Haller, 50 Ohio St.3d at 14, 552 N.E.2d at 210-211.

For example, in Jacobs v. Invisible Fence Co., Inc., the defendants represented that the type of case being settled was worth a maximum of $20,000, without revealing that they had settled a previous, similar lawsuit for $390,000. Jacobs v. Invisible Fence Co., Inc., 201 F.3d 440, 1999 WL 1204876, at *1 (6th Cir. 1999) (TABLE, text in WESTLAW). In Jacobs, the Sixth Circuit upheld the Ohio rule requiring tender back of consideration, which in that case would have also

---

[6] Under Ohio law, generally, the elements of fraudulent inducement are: "(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance." Micrel, Inc. v. TRW, Inc., 486 F.3d 866, 874 (6th Cir. 2007).

involved setting aside the settlement agreement and release signed in an earlier action between the parties. Jacobs, 1999 WL 1204876, at *2.

Zigdon claims that she received no (or insufficient) consideration in executing the mutual release. (Compl., at ¶ 106.) Zigdon was the defendant in a debt collection action. LVNV agreed to dismiss the pending suit, with prejudice, at plaintiff's cost. (Compl., exh B, release, at ¶ 3.) In addition, LVNV also agreed (as did Zigdon) to abandon any future claims it may have against her. Forbearance to pursue a legal right constitutes valid consideration. Bidinger v. Bidinger, 89 Ohio App. 274, 281, 101 N.E.2d 241, 244 (Ohio Ct. App. 1950). See also Forsythe v. BancBoston Mortg. Corp., 135 F.3d 1069, 1075 (6th Cir. 1997) (consideration proper where party relinquishes legal right to engage in activity); Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher, 123 F.R.D. 253, 257 (S.D. Ohio 1987), aff'd, 857 F.2d 1475 (6th Cir. 1988), cert. denied, 489 U.S. 1080 (1989) (release of counterclaim sufficient consideration to support settlement agreement); Mustang Equipment, Inc. v. Welch, 564 P.2d 895, 898 (Ariz. 1977).

The allegations of the complaint do not support a plausible claim that the release was obtained by fraud in the inducement. In addition, Zigdon does not allege that she is willing to tender back the consideration (which would involve resuming "the cost and burden of continuing [the Shaker Heights Municipal Court] litigation").

The court finds that the mutual release attached to the complaint bars Zigdon's claims against LVNV and its affiliates, agents or attorneys.

VIII.  SUMMARY

The named plaintiffs' Dec. 8, 2008, complaint was not timely filed within the FDCPA statute of limitations.  In addition, the allegations of the complaint are insufficient to support equitable tolling by reason of fraudulent concealment.

As to the possibility of class action tolling, when the Foraker case was filed in state court, the statute of limitations for plaintiff Ruth's FDCPA claim had already expired.  The only parties which might remain in the FDCPA action as a result of class action tolling would be plaintiff Zigdon and defendants LVNV Funding, LLC, and Resurgent Capital Services, LP.

However, plaintiff Zigdon's claims are barred by the mutual release (attached to the complaint) that she executed on July 10, 2008.

For these reasons, defendant Javitch, Block & Rathbone's motion to dismiss (doc. 5), as well as the joint motion to dismiss filed by LVNV Funding and others (doc. 9), should be granted, as to the federal (FDCPA) claims.  Additionally, defendant Millstone and Kannensohn's motion for judgment on the pleadings (doc. 14) should be granted, as to the FDCPA claims.

The remaining counts of the complaint are state law claims.  If the federal claims are all resolved before trial, the state claims are ordinarily dismissed without prejudice for lack of jurisdiction.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Musson Theatrical, Inc. v. Federal Exp. Corp., 89 F.3d 1244, 1254-1255 (6th Cir. 1996), amended by, 1998 WL 117980 (6th Cir. 1998) (citing cases).  However, in a case of removal, if at any time before final judgment, it

32

appears that the district court lacks subject matter jurisdiction, the removed case shall be remanded to state court.  28 U.S.C. § 1447(c).  See generally Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988).  The remaining state law claims should be remanded to the Cuyahoga County Court of Common Pleas.

<u>RECOMMENDATION</u>

It is recommended that defendant Javitch, Block & Rathbone's motion to dismiss  (doc. 5), as well as the joint motion to dismiss filed by LVNV Funding and others (doc. 9), should be granted, as to the federal (FDCPA) claims.  Additionally, defendant Millstone and Kannensohn's motion for judgment on the pleadings (doc. 14) should be granted, as to the FDCPA claims.  The remaining state law claims should be remanded to the Cuyahoga County Court of Common Pleas.

Dated:   Apr. 23, 2010             /s/ Kenneth S. McHargh
                                  Kenneth S. McHargh
                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).